United States District Court
Northern District of Indiana
Hammond Division

ORVILLE D. CARR,                )
                                )
           Plaintiff,           )
                                )
     v.                         )    Civil Action No. 2:07-CV-73 JVB
                                )
THE CITY OF EAST CHICAGO, INDIANA, )
                                )
           Defendant.           )

**OPINION AND ORDER**

This matter is before the Court on Defendant City of East Chicago's motion for summary judgment (DE 30) and motion to strike portions of Plaintiff's response (DE 37). Because Plaintiff Orville Carr is not represented by counsel, Defendant gave him the required explanation of the procedure for opposing a motion for summary judgment pursuant to Northern District of Indiana Local Rule 56.1(e) and Appendix C.

**A. BACKGROUND**

On March 9, 2007, Plaintiff Orville D. Carr sued the City of East Chicago and others.[1] He claims race discrimination under Title VII of the Civil Rights Act of 1964, as amended (42 U. S. C. § 2000e-5).

Plaintiff was employed by the City of East Chicago as a distribution maintenance repairman in the Water Department. He was dismissed after an argument with a coworker,

---

[1] The Court granted the motion to dismiss additional defendants George Pabey, Frank Ramirez, and Richard Gomez.

Enrique Santana, a meter reader. Plaintiff was upset that Santana went out on a call after hours. Plaintiff alleges that he was first suspended and then terminated solely because he is black.

**B. SUMMARY JUDGMENT STANDARD**

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "In other words, the record must reveal that no reasonable jury could find for the nonmoving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party may discharge its "initial responsibility" by simply " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. When the non-moving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials

negating the opponent's claim. *Id.* at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party may, if it chooses, support its motion for summary judgment with affidavits or other materials and thereby shift to the non-moving party the burden of showing that an issue of material fact exists. *Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986); *Bowers v. DeVito*, 686 F.2d 616, 617 (7th Cir. 1982); *Faulkner v. Baldwin Piano & Organ Co.*, 561 F.2d 677, 683 (7th Cir. 1977).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Federal Rule of Civil Procedure 56(e) establishes that "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 248–50 (1986). Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts; the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Juarez v. Ameritech Mobile Comm., Inc.*, 957 F.2d 317, 322 (7th Cir. 1992). Conclusory allegations not supported by the record, will not preclude summary judgment. *Haywood v. N. Am. Van Lines, Inc.*, 121 F.3d 1066, 1071 (7th Cir. 1997).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and

resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994); *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249–50; *Doe*, 42 F.3d at 443. However, under Northern District of Indiana Local Rule 56.1(b):

> In determining the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the "Statement of Genuine Issues" filed in opposition to the motion, as supported by the depositions, discovery responses, affidavits and other admissible evidence on file.

Generally, pro se litigants are subject to the same rules as litigants represented by counsel. *See Provident Sav. Bank v. Popovich*, 71 F.3d 696, 700 (7th Cir.1995).

## C.  MATERIAL FACTS

For the purpose of Defendant's motion for summary judgment only, the following material facts are not in dispute:

On January 23, 2006, Plaintiff, a distribution maintenance repairman in the East Chicago Water Department, received a telephone call from department director Frank Ramirez for an after-hours work assignment. He responded that he was not in the City, but could be there in fifteen to twenty minutes. He later found out that Ramirez had called Enrique Santana, a meter reader in the Water Department, to take the call. The next morning Plaintiff confronted Santana about Santana's acceptance of the after hours work assignment. He believed it was a job he

4

should have done. He yelled at Santana that he should not go out on these jobs. He wanted these jobs for himself. He was upset because Ramirez had given the job to Santana.

Santana reported the incident to Water Department Supervisor Ron Frechette, who contacted the City's Human Resources Department. Plaintiff was suspended without pay while Human Resources Director Richard Gomez investigated. He determined that Plaintiff had violated East Chicago Policy Handbook, Article VII, ¶ 5: "The use and abuse of profane language, threatening, bullying, or interfering with the supervisor or fellow employees' rights . . . will result in immediate disciplinary action." He reviewed the results of the investigation with Ramirez, who recommended discharging Carr. On February 2, 2006, Carr was terminated.

At his deposition, Plaintiff testified that he believes his discharge was racially motivated because he did not do anything serious enough to merit termination and all the people against him—Santana, Gomez, Ramirez, and East Chicago Mayor Pabey—are Puerto Ricans, who stick by one another through thick and thin.

**D. DISCUSSION**

**(1)** *Plaintiff's Prima Facie Case*

To avoid summary judgment, a plaintiff must establish a prima facie case of race discrimination by either the direct method or the indirect burden-shifting *McDonnell Douglas*[2] method. *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 938 (7th Cir. 2003). Under the direct method, a plaintiff must introduce evidence showing that the decision to terminate him was motivated by hostility toward him on the basis of his race such as admissions of the employer

---

[2]*McDonnell Douglas v. Green*, 411 U.S. 792 (1973).

that the termination was based on racial animus or circumstantial evidence which suggests discrimination. *Henry v. Jones*, 507 F.3d 558, 566 (7th Cir. 2007). Relevant circumstantial evidence may include suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees of the plaintiff's race; or evidence that similarly situated employees of a difference race received systematically better treatment. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 491 (7th Cir. 2007).

Absent direct evidence of discrimination, a plaintiff may withstand a motion for summary judgment by making out a prima facie case under the *McDonnell Douglas* indirect method. Under that method, an employee claiming that his discharge was motivated by racial discrimination must show that (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was meeting his employer's legitimate job performance expectations; (4) other similarly situated employees not in the protected class received more favorable treatment. *Brummett v. Lee Enterprises, Inc.*, 284 F.3d 742, 745 (7th Cir. 2002). If he is able to satisfy each of these elements, the employer must then articulate a legitimate, nondiscriminatory explanation for the adverse action. If the employer makes this showing, the burden shifts back to the employee to show that the employer's proffered reason is pretextual, meaning that it was a lie. *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 690–91 (7th Cir. 2008).

**(2)** *Defendant's Motion to Strike*

The Plaintiff's response in opposition to Defendant's motion for summary judgment consisted of twenty-one pages of documents, including, among other items, an East Chicago

police report,[3] an Indiana Department of Workforce Development (IDWD) Notice of Filing; two IDWD Determinations of Eligibility; and a document entitled Confidential Information, the unsworn statement of Craig Edwards. The Defendant claim these documents should be stricken from the record. Plaintiff's documents are neither in the form of affidavits nor otherwise authenticated or explained.

The police report, dated September 28, 2004, relates to Robert A. Bursua's complaint of battery. He was found bleeding from a cut above his right eye at the scene of a disturbance in the area of Chicago and Magoun Streets in East Chicago. According to the report, Mr. Bursua saw a City-owned pay loader sitting in front of Burger King. He told police that after he put a Pabey for Mayor sticker on the pay loader he was attacked by Angel Amaro, who was identified in the report as Puerto Rican. DE 35 at 7–9. The officer who completed the report concluded with "Be advised Street Department supervisors were notified of the situation and the City pay loader was turned over to them." DE 35 at 9.

Defendant has moved to strike the police report on the grounds that it bears no certification of authenticity as required by Federal Rule of Evidence 902(4) and that it contains inadmissible hearsay. However, the more fundamental problem with the report is that it does not assist in establishing any element of the Plaintiff's prima facie case. The Plaintiff may have offered the report to show that a similarly situated employee not in the Plaintiff's protected class received better treatment. However, the Plaintiff has not shown how the Defendant dealt with this employee, if he was in fact Defendant's employee. Moreover, how an employee of the East

---

[3]Defendant claims that the police report is incomplete. Indeed DE 35 consisted of 19 pages until the Court reviewed the paper file containing the Plaintiff's submission and discovered that the Clerk had inadvertently failed to scan two pages of the police report. That error has been rectified. *See* DE 35, pages 7–9.

Chicago Street Department, under a different City administration, was treated in 2004 is not sufficiently similar to the Plaintiff's situation as a Water Department employee in 2006 to establish the fourth element of the *McDonnell Douglas* test.

The Indiana Department of Workforce Development documents show that Plaintiff applied for unemployment compensation benefits after he lost his job. From the unexplained documents it is difficult to piece together the sequence of events.[4] Plaintiff apparently received a favorable ruling on March 9, 2006. The conclusion was that Plaintiff was not discharged for just cause, because the Defendant had not established that Plaintiff had been warned his job was in jeopardy. According to a second Determination, mailed on May 18, 2006, Plaintiff was not discharged for just cause and Defendant had not provided sufficient information to sustain its burden of proof. A Notice of Filing (DE 35 at 16) from the IDWD Director of U. I. Appeals indicates that Defendant had requested a hearing, where the issues would be whether Plaintiff was discharged for just cause and whether Defendant had submitted timely information, but the record does not reveal whether such a hearing occurred or what its outcome was.

Defendant has moved to strike the IDWD documents because they are not properly authenticated and because Plaintiff did not disclose them pursuant to Defendant's discovery request. Moving beyond these technical and procedural objections**,** the Court finds that the IDWD documents cannot be used to establish Plaintiff's prima facie case or to show that the Defendant's reasons for discharging him were pretextual because of the fundamental differences between proceedings to determine eligibility for unemployment compensation and a Title VII

---

[4]DE 35 pages 11 and 12 are duplicates of the same document, the front side of a two-sided document entitled Determination of Eligibility, which was mailed on March 9, 2006. At the bottom of the Determination the instructions "Please see reverse side for appeal procedure" appears. The reverse side was not filed as part of DE 35.

action.  The burden of proof is different in each proceeding.  Also, the Notice of Filing suggests the decision rested on the Defendant's failure to submit evidence on time rather than on the merits of the case.[5]

In *McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789 (7th Cir. 1997), the court refused to consider an IDWD determination to support the plaintiff's claim of pretext, noting that the employer has the burden of proof in an unemployment compensation case but in a Title VII action the burden is on the employee to prove that the reason given for the adverse action is a pretext.  Although the court did not reach the issue of whether Indiana Code § 22-4-17-12(h) (prohibiting the admission of an unemployment compensation award for any other purpose in any state of federal court) is binding in a federal court, it did state that the statute "serves to underline the uniqueness of such proceedings, a uniqueness that counsels against" using a determination of eligibility for unemployment compensation in other contexts.  *Id.* at 798, n.11.

Plaintiff has offered the unsworn statement of Craig Edwards relating an incident between Doug Verrill and Rocky Marquez which Defendant has moved to strike because it was not signed under penalty of perjury and was not supplied in response to Defendant's discovery requests.  Once again, overlooking the technical and procedural shortcomings, the Court finds that the statement does not aid the Plaintiff's prima facie case.  According to Edwards's statement, on September 14, 2006, he heard Verrill and Marquez talking at the Water Department.  Verrill told Marquez that he should go back to Africa. When Edwards questioned Marquez about the conversation later, Marquez told him that Verrill said that Edwards should go

---

[5]Defendant asserts in its Reply memorandum that Defendant did not respond to the claim.  According to the Circumstances of Case in the Determination of May 18, 2006, a written request for information about the Plaintiff's separation had been sent but no response had been received.

9

back to Africa where he belongs and that he (Verrill) could not wait until the KKK takes back this town. Edwards reported the incident to Maria Dedinsky, whom he described in the statement as "our boss." There is no information about what her response was. DE 35 at 3. The Plaintiff does not explain whether Verill is a coworker or a supervisor; whether Dedinsky was Plaintiff's former boss and Edwards's boss, Edwards and Marquez's boss, or all of the above. Plaintiff has not shown that either Verrill or Dedinsky played any part in his discharge. While the remarks attributed to Verrill are offensive, Plaintiff has not shown that they had to do with his termination some eight months earlier.

For the reasons explained above, the Court finds it unnecessary to rule on the Defendant's motion to strike these portions of Plaintiff's response because none of the challenged documents aid the Plaintiff in establishing a prima facie case of discrimination.

**(3)** *Plaintiff's Other Evidence.*

Plaintiff has highlighted certain portions of the personnel policies. He has marked item 18 of Section VIII. The introduction to that section states: "The following guidelines describe the appropriate disciplinary action for unacceptable conduct or behavior." Item 18 refers to threatening, bullying, or interfering with another employee. Under the heading "First Offense" the disciplinary action "5 days + CEO" appears. No disciplinary action appears under the headings for second through fifth offenses. DE 35 at 2. At the end of Section VIII, the disciplinary actions are explained: 5 days + CEO means "a five day suspension and conference with the Executive Officer (Department Head) relative to termination or other penalties." DE 31-3 at 11. Instead of supporting the Plaintiff's claim that he was unfairly treated, the highlighted

excerpts from the employment policies tend to show that Defendant was literally going by the book in first suspending him for five days and then terminating him for the alleged bullying incident.

Plaintiff also highlighted the last line of a job description for the position of Helper in the Distribution Division of the Water Department: "Incumbent must own a telephone, be on 24-hour call and work a fair amount of overtime." DE 35 at 18. In his Charge of Discrimination Plaintiff described his title as Distribution Maintenance Repairman. Assuming that the helper job description applies to Plaintiff, it does not help him defeat summary judgment. Although the job description may support his contention that the assignment Santana accepted was within Plaintiff's job description, it does not establish that it was improper for Santana to do the job when instructed to by his supervisor, or that Plaintiff's yelling at Santana about it was the appropriate way to deal with his displeasure at not getting the assignment.

The other documents making up Plaintiff's response, his termination notice, Charge of Discrimination, a Department Seniority list, and excerpts from a cell phone billing notice, do nothing toward establishing a prima facie case that Defendant discharged Plaintiff because of his race.

**CONCLUSION**

Plaintiff has failed to make a prime facie case of discrimination under either the direct or indirect method. Moreover, he has offered no evidence to prove that Defendant's claimed reason for discharging him was a lie. Accordingly, the Court **GRANTS** Defendant's motion for summary judgment and **DENIES** its motion to strike as moot.

SO ORDERED on March31, 2009.

                                                        <u>s/ Joseph S. Van Bokkelen</u>
                                                        Joseph S. Van Bokkelen
                                                        United States District Judge